AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Marcus Joseph DeFranco,<br><br>*Defendant(s)* | )<br>)<br>) Case No. 20-6066-Hunt<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 11, 2019, and September 11, 2019__ in the county of _____Broward_____ in the
___Southern___ District of ___Florida___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2 | Count 1: Possession with Intent to Distribute Five Grams or More of Methamphetamine |
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2 | Count 2: Possession with Intent to Distribute Fifty Grams or More of Methamphetamine |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

J. Brian Whitworth, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/6/2020

_____
*Judge's signature*

City and state:  Fort Lauderdale, Florida          Patrick M. Hunt, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your affiant, J. Brian Whitworth, being duly sworn, deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Drug Enforcement Administration ("DEA") and have served in this capacity since March 2012. Currently, I am assigned to Enforcement Group 6 in the Miami Field Division.[1] As a DEA Special Agent, I have participated in the execution of numerous search and seizure warrants, resulting in the seizure of illegal controlled substances, packaging materials, firearms, and other tools of the drug trade. I also participated in debriefings of narcotic traffickers, cooperating individuals, and sources of information. Through these debriefings, I have become familiar with the terminology, code words, and brand names used by drug dealers. In addition, I have testified before grand juries on a number of occasions, resulting in federal indictments. I also have experience assisting an investigation that involved money laundering, and international drug trafficking and conspiracy.

2. I previously completed a sixteen-week DEA Basic Agent training program at the DEA Training Academy in Quantico, Virginia, where I received detailed training, both academic and practical application, in the areas of informant handling/debriefing, interview and interrogation techniques, undercover techniques, and the method used by drug traffickers pertaining to the packaging, pricing, importation, and trafficking of controlled substances. In addition, I received academic and practical application training in surveillance and counter surveillance techniques/methods. I also received legal instruction in the Controlled Substances Act, federal drug conspiracy law, Federal Rules of Evidence, Fourth Amendment searches and seizures, the

---

[1] Prior to this assignment, I was an officer/detective with the Charlotte-Mecklenburg Police Department in Charlotte, North Carolina, for over twelve and half (12.5) years.

1

execution of search warrants, and drafting affidavits. Through my training and experience, I am familiar with the actions, traits, habits, and terminology utilized by drug traffickers, as well as the manner in which they conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the Internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions.

3. As a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), I am empowered by law to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 18, 21, and 46 of the United States Code.

4. I make this Affidavit in support of a criminal complaint charging Marcus Joseph DEFRANCO with two counts of knowingly and intentionally possessing with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), and 18 U.S.C. § 2.

5. I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including other law enforcement officials, and my review of records and other evidence obtained during the course of this investigation. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

## PROBABLE CAUSE

6. Between in or around June 2019 and in or around September 2019, a law enforcement officer acting in an undercover capacity ("UC") made contact with Christopher Allen Fredricks in order to purchase crystal methamphetamine from him.

2

7.     On or about July 11, 2019, the UC met with Fredricks in Davie, Florida, in order to purchase approximately one (1) ounce of crystal methamphetamine. An undercover law enforcement officer (UC) met Fredricks at the Cypress Creek Train Station and invited him into the UC vehicle. Upon entering the vehicle, Fredricks told the UC to drive toward Sunrise Blvd. During the trip, Fredricks utilized the UC's phone and called "Marcus," later identified by law enforcement as Marcus Joseph DEFRANCO. DEFRANCO gave Fredricks directions to a Publix parking lot located in Davie, Florida. Upon arriving, Fredricks called DEFRANCO again and exited the UC vehicle. The UC remained in his vehicle and did not see where Fredricks went. Later, Fredricks returned as the passenger of a gray Acura. Fredricks exited the Acura and approached the UC to ask for four hundred dollars ($400.00) in United States currency, which was approximately half of the money that the UC agreed to provide for the crystal methamphetamine. The UC refused the request but asked Fredricks to take photos of the crystal methamphetamine. Fredricks returned to the passenger side of the Acura. A short time later, DERANCO exited the Acura and approached the UC driver's door. DEFRANCO told the UC that there would be no photographs taken of the methamphetamine claimed that his (DEFRANCO's) supplier was in the parking lot. DEFRANCO advised the UC that he sells nine (9) kilograms of methamphetamine per week, so having to deal with this issue for only a single ounce of methamphetamine was "crazy." DEFRANCO assured the UC that no one would steal the money. The UC provided Fredricks with the requested money, prompting Fredricks and DEFRANCO to walk back toward the Acura, enter it, and drive towards the Publix. Later, law enforcement observed DEFRANCO walking over to a silver Chevrolet vehicle and meeting with a male before entering the vehicle. Law enforcement then observed DEFRANCO exit the silver Chevrolet with a small box in his

hand and returning to the Acura. A short time later, the gray Acura returned to the area and parked near the UC vehicle. Fredricks exited the vehicle and entered the UC vehicle. The UC paid an additional four hundred and thirty dollars ($430.00) in United States currency to Fredricks in exchange for approximately one (1) ounce of crystal methamphetamine. The substance field-tested positive for methamphetamine. Laboratory analysis determined that the amount of pure methamphetamine seized on this date was 28.18 grams ± 1.72 grams with a purity rate of 99% ± 6%.

8. On or about September 11, 2019, law enforcement arrested Fredricks in Fort Lauderdale, Florida, while he was in possession of approximately three (3) ounces of crystal methamphetamine. Prior to arriving on scene, Fredricks communicated with the UC to meet with his (Fredricks') associate, who Fredricks advised was the person that the UC had previously met, presumably DEFRANCO. Upon arresting Fredricks, law enforcement observed DEFRANCO in the parking lot and detained him. During a post-*Miranda* interview, DEFRANCO told law enforcement that he provided the crystal methamphetamine that Fredricks had in his possession to Fredricks, adding that he (DEFRANCO) obtained that methamphetamine on credit from his source. Laboratory analysis determined that the amount of pure methamphetamine seized on this date was 85.03 g ± 0.01 g with a purity rate of 71% ± 5%.

9. Based on my training and experience, and as further supported by the facts in this Affidavit, I respectfully submit that probable cause exists that Marcus Joseph DEFRANCO committed the following criminal violations:

- Count 1 – On or about July 11, 2019, Marcus Joseph DEFRANCO knowingly and intentionally possessed with intent to distribute five grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

- Count 2 – On or about September 11, 2019, Marcus Joseph DEFRANCO knowingly and intentionally possessed with intent to distribute fifty grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

**FURTHER AFFIANT SAYETH NAUGHT**

J. Brian Whitworth, Special Agent
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to before me this the ___6th___ day of February, 2020.

HONORABLE PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE